IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FRANK W. VINCENZO and
SANDRA K. VINCENZO, his wife,**

    Plaintiffs,

v. // CIVIL ACTION NO. 1:07cv26
                      (Judge Keeley)

**AIG INSURANCE SERVICES, INC.,**

    Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 78)
<u>OF DEFENDANT AIG INSURANCE SERVICES, INC.</u>**

Pending before the Court is defendant AIG Insurance Services, Inc.'s ("AIG")[1] Motion for Summary Judgment. For the reasons that follow, the Court **GRANTS** the motion.

### I. <u>Background</u>

When considering a motion for summary judgment, a court is to review the record in the light most favorable to the non-moving party and grant that party all permissible inferences that may be drawn from the evidence. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247(1986).

---

[1] The defendant notes that its true name is Chartis Claims, Inc., formerly known as AIG Domestic Claims, Inc. For convenience, the Court will refer to the defendant as styled on the docket of the case, or as "AIG."

**VINCENZO v. AIG INS. SERVICES, INC.**                1:07cv26

**MEMORANDUM OPINION AND ORDER**

## A. The Underlying State Court Litigation

On April 24, 1998, the plaintiff, Frank W. Vincenzo ("Vincenzo"), suffered an accident while working as an insulator at the Fort Martin Power Station ("Fort Martin") in Maidsville, Monongalia County, West Virginia. Fort Martin is owned by Monongahela Power Company ("Monongahela Power"). At the time of the accident, Vincenzo was an employee of Global Power Company ("Global Power"), a subcontractor of Monongahela Power. Vincenzo apparently stepped or fell into a gap between sections of a metal walkway located near a boiler in the coal-fueled power plant, seriously injuring his knees and back.

Shortly after his injury, Vincenzo filed a claim for benefits with the West Virginia Workers' Compensation Commission. He then retained attorney Jacob Robinson ("Robinson") to file a personal injury lawsuit ("the underlying action") against Monongahela Power, Global Power and several related defendants in the Circuit Court of Monongalia County. There is no indication in the record whether Vincenzo or Robinson contacted AIG or the named defendants to demand settlement before filing his lawsuit. (See Def.'s Motion for Summary Judgment (dkt. no. 78), Exs. A & G.) Moreover, Vincenzo filed that action on April 24, 2000, the last day before his claims

would have been barred under the applicable statute of limitations, W. Va. Code § 55-2-12.

Vincenzo's lawsuit alleged that, as a result of the injuries he suffered from the accident at Fort Martin, he incurred medical expenses in excess of $30,000 and lost wages (past and future) in excess of $50,000 (dkt. no. 78-2, at 4-5). The suit's <u>ad damnum</u> clause sought damages in the amount of $500,000 plus interest, costs and expenses. <u>Id.</u>

After being served with the lawsuit, both Monongahela Power and Global Power made a demand on AIG, Global Power's liability carrier, for defense and indemnification. AIG's adjuster opened a claim file on June 12, 2000 and, noting the amount of medical damages and lost wages alleged in the complaint, established an initial reserve of $60,000. On June 29, the adjuster also determined that the indemnity provisions of AIG's policy with Global Power obligated it to provide a defense to Monongahela Power.

On August 4, 2000, Global Power filed for bankruptcy in the District of Delaware. During a status conference in Vincenzo's case before the Circuit Court of Monongalia County on November 17, 2000, Global Power's attorney, George Stewart ("Stewart"), informed the court and the parties about Global Power's bankruptcy and

**VINCENZO v. AIG INS. SERVICES, INC.**　　　　　　　　1:07cv26

**MEMORANDUM OPINION AND ORDER**

advised them that Vincenzo's claims against his client were subject to an automatic stay. Following that, on January 31, 2001, Global Power formally filed a notice of bankruptcy with the state court. Eventually, on August 29, 2001, the circuit court entered an order staying Vincenzo's case.

Meanwhile, on March 19, 2001, Stewart wrote to Vincenzo's attorney, Robinson, stating that Robinson's continued discovery efforts in Vincenzo's case violated the automatic bankruptcy stay. Stewart also inquired when Robinson would file a stipulation with the bankruptcy court agreeing to seek only insurance proceeds and not the assets of the debtor, Global Power, in Vincenzo's case. Had Robinson done so, it would have allowed Vincenzo's lawsuit to proceed unabated.

Stewart sent ten more such letters to Robinson[2] referencing statements by Robinson about his intent to seek relief from the stay. Robinson apparently never responded to any of Stewart's correspondence. In fact, he took no action to lift the stay until July 14, 2004, when he and the trustee in Global Power's bankruptcy case finally filed the stipulation that permitted Vincenzo to

---

[2]March 19, 2001 (second letter on that date), April 25, 2001, June 12, 2001, December 19, 2001, January 17, 2002, May 13, 2002, November 14, 2002, November 10, 2003, February 26, 2004, and May 21, 2004.

4

proceed with his lawsuit. Following the filing of the stipulation, the circuit court, on August 23, 2004, entered an order lifting the stay on discovery and other proceedings in Vincenzo's case.[3]

Shortly after that, the parties resumed discovery. Vincenzo produced a trickle of medical records between November, 2004 and May 2005, while Robinson indicated to defense counsel that he intended to provide additional medical records and make a demand for settlement. (Dkt. No. 78, Ex. F.) Neither additional medical

---

[3]Surprisingly, Vincenzo argues that, despite the stay imposed due to Global Power's bankruptcy, his claims against Monongahela Power continued unaffected. There is no evidence in the record, however, that Robinson ever disputed, or even attempted to dispute, the effect of Global Power's bankruptcy on the other defendants in his state court case. Moreover, the order entered by the Circuit Court of Monongalia County clearly stayed the entire case as of August 29, 2001.

Whether the automatic stay affecting Vincenzo's case against Global Power also barred him from proceeding against Monongahela Power is a question of law. AIG argues the stay was effective against Monongahela Power due to Global Power's indemnification obligations. That issue is irrelevant to the matters this Court must decide in the case at bar, however.

In the first place, it is undisputed that Vincenzo never attempted to prosecute his lawsuit against Global Power or Monongahela Power in any meaningful way until after his attorney filed the stipulation lifting the stay, nearly four years following the first opportunity to do so. Although Vincenzo served discovery on Global Power, to whom the stay indisputably applied, there is no evidence in the record of any such activity with Monongahela Power. Secondly, it is also undisputed that the circuit court stayed all discovery in Vincenzo's case once it received notice of Global Power's bankruptcy.(Dkt. No. 92-9.)

records nor a demand were forthcoming, however,[4] until a mediation on May 31, 2005, when Robinson turned over approximately 500 additional pages of Vincenzo's medical records and demanded $1.4 million to settle the lawsuit. The defendants, who had initially offered $30,000, but had not had an opportunity to review the newly disclosed medical records, did not increase their offer and the mediation concluded with an understanding on both sides that the parties would conduct further discovery.

Thereafter, between June and December 2005, Robinson provided the defendants with additional medical and financial information and identified his expert witnesses and treating physicians. The parties also inspected the site of Vincenzo's injury at Fort Martin, and the defendants conducted a Rule 35 medical examination of Vincenzo. On December 2, 2005, Vincenzo reduced his demand to $1.25 million. At a second mediation on December 28, 2005, the defendants increased their offer to $310,000. Although Vincenzo rejected this offer, the parties continued to negotiate and, finally, on January 3, 2006, agreed in principle to resolve Vincenzo's lawsuit for $450,000. Final settlement was delayed for nearly a year, however, while the parties disputed whether the

---

[4]Defense counsel sent at least three letters requesting a demand, in January, February and March of 2005, but there is no evidence that Robinson ever responded.

terms of their agreement barred a bad faith claim by Vincenzo against AIG – a claim that, unknown to the defendants or to AIG, Robinson had already filed but not served on AIG.

### B. The Bad Faith Action

Although Vincenzo filed this bad-faith suit against on July 7, 2005, the Circuit Court of Monongalia County dismissed it on January 24, 2006, because he had never served AIG. Vincenzo then re-filed the case on the last day of the limitations period established by W. Va. Code § 55-2-18 (West Virginia's "savings statute"). Under the savings statute, a case dismissed for reasons other than the merit of the claim may be re-filed within one year, and is not barred by the statute of limitations if the original filing was timely.[5]

One day after Vincenzo first filed his bad faith claim against AIG, W. Va. Code § 33-11-4a became effective. That statute barred third-party bad faith claims, such as this action, in West Virginia, thereby abrogating the holding in Jenkins v. J.C. Penney

---

[5]In fact, the claim was not subject to the general statute of limitations in W. Va. Code § 55-2-12, but rather to a one-year limit that would not have begun to run until the resolution of the underlying claim. Klettner v. State Farm Mut. Auto. Ins., 519 S.E.2d 870, 876 (W.Va. 1999).

Cas. Ins. Co., 280 S.E.2d 252, 254 (1981). Following the effective date of § 33-11-4a, Vincenzo re-filed his bad faith action on January 24, 2007.  AIG timely removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 on February 26, 2007, and moved to dismiss it based on § 33-11-4a's bar of third-party bad faith actions. This Court denied AIG's motion, holding that, under West Virginia's savings statute, Vincenzo's suit related back to its original filing date and thus was unaffected by the newly-enacted statutory bar. (Dkt. no. 17); 2007 WL 2773834. The Fourth Circuit Court of Appeals affirmed this decision on interlocutory appeal in Vincenzo v. AIG Ins. Services, Inc., 288 Fed.Appx. 875 (4th Cir. 2008)(unpublished).

Vincenzo alleges that AIG violated the West Virginia Unfair Trade Practices Act ("UTPA" or "Act"), W. Va. Code §§ 33-11-1 et seq., in its handling of his personal injury claim. Specifically, he accuses AIG of bad faith by

> not attempting in good faith to effectuate prompt fair and equitable settlements of claims in which liability has become reasonably clear; fail[ing] to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; attempting to starve the plaintiff into an unjust settlement; unreasonably refusing to acknowledge that Frank W. Vincenzo and Sandra K. Vincenzo's injuries were caused by the accident that is the subject of this suit; failing to negotiate in good faith; and other acts and omissions.

(Complaint, dkt. no. 1-1, at Para. 26.) In addition to compensatory and general damages, Vincenzo seeks punitive damages, because AIG's alleged acts and omissions "were willful, wanton, and done with actual malice and/or, malicious and/or reckless and/or in reckless disregard for the civil rights of the plaintiffs." (Id. at Para. 32.)

## II. West Virginia's Unfair Trade Practices Act

Although the UTPA does not explicitly provide for a private cause of action against an insurer who violates its provisions, the Supreme Court of Appeals of West Virginia recognized an implied cause of action in Jenkins v. J.C. Penney Cas. Ins. Co., 280 S.E.2d 252, 254 (1981)(overruled on other grounds, Farm Fire & Cas. Co. v. Madden, 451 S.E.2d 721 (W.Va. 1994))(abrogated by W. Va. Code § 33-11-4a). Because this case is controlled by Jenkins and its progeny, Vincenzo must show more than a single isolated violation of the UTPA, as the statute only prohibits conduct undertaken "with such frequency as to indicate a general business practice" of unfair actions. Jenkins, 280 S.E.2d at 260. Vincenzo may establish these multiple violations either by virtue of actions AIG took in his own case or by evidence of AIG's actions in handling other claims. Id.

**VINCENZO v. AIG INS. SERVICES, INC.**                1:07cv26

**MEMORANDUM OPINION AND ORDER**

### III. <u>Analysis</u>

"A court may award summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." <u>In re French</u>, 499 F.3d 345, 351-352 (4th Cir. 2007)(citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247(1986)). Here, AIG argues that Vincenzo has no evidence of bad faith that would support a jury verdict in his favor. It notes that Vincenzo's complaint alleges delay in attempting to effectuate a prompt and fair settlement thereby forcing Vincenzo to file suit, making "lowball" offers, and implementing claim-handling procedures that prevented a prompt settlement.

In its response to these allegations, AIG argues that any delay in settling Vincenzo's case was not a result of its recalcitrance, but was due to the failure of Robinson, Vincenzo's lawyer, to diligently prosecute his client's claims. It asserts that it extended offers based on the limited information available to it at the time, and that its procedures for handling claims are reasonable business practices in the insurance industry. As discussed below, the Court concludes that there are no questions of material fact and that AIG did not violate the UTPA in a manner indicating a general business practice.

**VINCENZO v. AIG INS. SERVICES, INC.**                1:07cv26

**MEMORANDUM OPINION AND ORDER**

### A. AIG Did Not Delay the Underlying Action.

Vincenzo claims that the long period of delay between his injury and the final settlement of his state lawsuit is unreasonable. Indeed, it is undisputed that nearly eight years elapsed before Vincenzo received $450,000 in settlement of his personal injury claims. Despite this, there is no evidence that the periods of delay are attributable to any action or inaction on AIG's part.

According to Vincenzo, AIG, through its insured, Global Power, had notice of Vincenzo's claim as soon as his injury occurred. This argument fails for two reasons, however. First, Vincenzo ignores the distinction between knowledge of an injury and notice of a claim. Second, AIG cannot be held to have had notice of a claim merely because its insured, Global Power, was aware of the accident.

### 1. Vincenzo Made No Personal Injury Claim Prior to Filing Suit.

Vincenzo was injured on April 24, 1998. Although he promptly sought relief through West Virginia's workers' compensation system, he made no other claims before he filed suit on April 24, 2000. The record is devoid of any communication whatsoever prior to that time from Vincenzo or Robinson to either AIG or any of the

11

defendants named in Vincenzo's suit.[6] Service of the complaint, thus, was the first notice the defendants received of Vincenzo's personal injury claims. AIG's initial notice came later, when the defendants demanded coverage in June, 2000, following which AIG promptly opened a claim file.

Under West Virginia law, AIG was under no legal duty to pay or investigate a claim before one was made. W. Va. Code R. § 114-14-2.11 defines a "claim" in this context as "any communication by a claimant to an insurer or its agent which reasonably apprises the insurer or agent of an occurrence which might give rise to liability under a policy or contract of insurance." As the claimant, Vincenzo never communicated with AIG prior to suing its insured, Global Power. Nor did he ever advise Global Power or Monongahela Power of his claim before he sued them, or demand that they submit a claim to AIG on his behalf.

**2. Global Power's Attorney Was Not AIG's Agent.**

Despite Vincenzo's argument to the contrary, Global Power's attorney, Hal Albertson ("Albertson"), who handled its defense of

---

[6]Global Power, as Vincenzo's employer, had knowledge of the workers' compensation claim, but Vincenzo points to no evidence that this file indicated Vincenzo was making any claims for damages outside of the workers' compensation system.

Vincenzo's workers' compensation claim, cannot be considered an agent of AIG for purposes of notice under § 114-14-2.11. Global Power, not AIG, retained Albertson to handle Vincenzo's claim, and AIG had no access to Albertson's impressions until after Vincenzo filed suit, when Global Power, as its insured, forwarded such information to AIG, together with its demand for defense and indemnification. Accordingly, there is no material dispute about whether AIG had notice of Vincenzo's claim before June, 2000.

### 3. <u>Once On Notice, AIG Acted Promptly On Vincenzo's Claims.</u>

After it received notice of Vincenzo's lawsuit, AIG acted promptly and reasonably in its handling of the claim. Because from the outset Vincenzo's claim was a litigation matter, AIG could not communicate directly with him but was obligated to address the matter through his attorney, Robinson. Robinson, however, made no early demand for settlement and provided little supporting information in the form of medical records to AIG before Global Power filed for bankruptcy on August 4, 2000.

Following the filing of Global Power's bankruptcy petition, and from at least the status conference held by the Circuit Court of Monongalia County on November 17, 2000, the parties understood that discovery and other proceedings in Vincenzo's case were

stayed. Nevertheless, Stewart's numerous letters to Robinson establish that all the parties expected Robinson would promptly move to lift that stay in order to allow Vincenzo's lawsuit to proceed.

Notably, the record is silent as to why Robinson delayed in seeking to lift the bankruptcy stay. Whatever his reasons may have been, responsibility for the delay from November 2000[7] until August 2004 must rest solely with Vincenzo and his attorney, and in no way can evince bad faith on AIG's part.

After the Circuit Court of Monongalia County lifted the stay in Vincenzo's case on August 24, 2004, the parties resumed their discovery. Yet even as late as November 2004, Robinson's correspondence to defense counsel indicated that he was still not in possession of all of his client's medical bills and would be producing more in the future. Indeed, he continued to supplement Vincenzo's medical records throughout the spring of 2005, and made no demand for settlement until the parties finally met to mediate the case on May 31, 2005. At that time, Robinson served a large number of previously undisclosed medical records and expert reports

---

[7]Although the stay took effect immediately upon the filing of Global Power's petition, the Court gives Vincenzo the benefit of the doubt and presumes that he had no notice of the bankruptcy stay until the November status conference.

on defense counsel and demanded $1.4 million to settle his client's case. Predictably, because the defendants needed time for further discovery and to consider the demand, the mediation failed.

Discovery then continued throughout the summer, fall and early winter of 2005, during which time Vincenzo's attorney eventually reduced his client's demand to $1.25 million. Following further mediation and negotiation, in early January, 2006, the parties agreed to settle the case for $450,000.

When all this evidence is considered in the light most favorable to Vincenzo, there is no dispute that the underlying suit resolved in less than two years[8] once the periods of delay attributable to Vincenzo and Robinson are discounted. Even if Vincenzo could establish that the defense attorneys somehow deliberately delayed or obstructed the progress of the litigation, and there is no evidence of such obstruction in the record, their conduct is not subject to the provisions of the UTPA. See Syl. Pt. 5, Rose v. St. Paul Fire and Marine Ins. Co., 599 S.E.2d 673 (W. Va. 2004). AIG is responsible for the actions of attorneys it provided to its insureds only if it "breached its duties under the Act by knowingly encouraging, directing, participating in, relying

---

[8]June, 2000-November, 2000 (five months); August, 2004-January, 2006 (17 months).

upon, or ratifying wrongful litigation conduct." Id., Syl. Pt. 6. Again, there is no evidence of such conduct in the record.

Furthermore, even if one could conclude that two years was an unreasonable amount of time to spend litigating a personal injury action involving ongoing treatment, multiple defendants, and voluminous medical and other records, that delay cannot rest solely at the feet of AIG. Rather, under the supervision of the Circuit Court of Monongalia County, the parties, not their insurer, controlled the timeline of the litigation and any negotiations. Moreover, Vincenzo's attorney never made a demand for settlement until May 31, 2005, the same day on which he also served a large number of previously undisclosed medical records critical to the defendants' evaluation of Vincenzo's claim. Thus, AIG did not breach the UTPA by any delay in attempting to effectuate a prompt and fair settlement.

### B. AIG's Did Not Force Vincenzo to File Suit By Refusing to Pay a Reasonable Claim.

Vincenzo claims that AIG violated the UTPA by wrongfully refusing to pay a reasonable claim, thus forcing him to resort to litigation. See W. Va. Code § 33-11-4(9)(g)(defining as a prohibited unfair practice "[c]ompelling insureds to institute litigation . . . by offering substantially less than the amounts

ultimately recovered . . . when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered"). As the Court has already noted, however, there is no evidence that AIG had notice of any claim by Vincenzo, and thus a duty to extend an offer, until he filed his lawsuit. Even if the Court were to assume that the amount Vincenzo ultimately recovered ($450,000) was reasonably similar to his initial demand ($1.4 million), Vincenzo did not make this demand until five years after he filed his lawsuit. Any argument that AIG's refusal of a reasonable demand compelled the filing of Vincenzo's personal injury lawsuit is therefore without factual basis. Accordingly, AIG did not violate this provision of the UTPA.

### C. AIG Did Not Fail to Offer a Reasonable Settlement.

Vincenzo claims that AIG's initial settlement offer of $30,000 in May 2005 was an unreasonable "lowball" tactic that violated the UTPA. At the time AIG made this offer, however, it had incomplete medical evidence and, based on Vincenzo's attorney's indication, knew that more medical records would be forthcoming. Indeed, Vincenzo's attorney did not produce the bulk of the medical evidence in the case until the May 2005 mediation and thereafter. Moreover, as noted above, neither defense counsel, nor AIG by

implication, violated the UTPA merely by negotiating as litigators in a disputed case. See Rose, 599 S.E.2d 673. The Court, therefore, concludes that the offer of $30,000 at the May 2005 mediation did not violate any duty of AIG under the UTPA.

### D. **AIG Did Not Fail to Implement Reasonable Procedures.**

Vincenzo alleges that AIG failed to adopt reasonable procedures to govern the claims handling process in his case. The record, however, is bereft of any evidence supporting his contention. The only specific procedure that Vincenzo identifies is AIG's practice of passing claims up the chain of command based on an adjuster's settlement authority. He offers no evidence that this policy constituted an unreasonable practice in the insurance industry; nor does he proffer that the policy affected the outcome of his claim in any way.[9] There is, therefore, no evidence that AIG implemented unreasonable procedures to govern the handling of Vincenzo's claim or that it violated this requirement of the UTPA. See W. Va. Code § 33-11-4(9)(c).

---

[9] During discovery, this Court affirmed the decision of the magistrate judge to strike Vincenzo's expert witnesses due to his failure to comply with the requirements of the Federal Rules of Civil Procedure. Accordingly, the testimony of AIG's fact and expert witnesses regarding its claims-handling practices and its compliance with insurance industry standards is uncontroverted.

### IV. Further Discovery is Not Warranted.

In a final effort to stave off dismissal of his bad faith claim, Vincenzo seeks to extend discovery in this case by alleging that AIG has failed to adequately respond to his discovery requests. He posits that documents exist evincing a scheme on the part of AIG to improperly reward its employees on the basis of reduced claim payouts.[10] Because the Court has already addressed these issues, see dkt. no. 88, Order/Opinion Denying Plaintiffs' Motion to Compel, it denies Vincenzo's request to extend discovery.

### V. Conclusion

Because there are no genuine issues of material fact in dispute in this case, AIG is entitled to judgment as a matter of law. Vincenzo has failed to show a single violation of the UTPA, let alone a pattern of conduct that would support a conclusion that such violations constituted a general business practice of AIG. Accordingly, the Court **GRANTS** AIG's motion for summary judgment (dkt. no. 78), **ORDERS** the case **DISMISSED WITH PREJUDICE**, and **DIRECTS** the Clerk of Court to retire the case from the docket of the Court.

---

[10]Vincenzo cites no good faith basis for these allegations.

**VINCENZO v. AIG INS. SERVICES, INC.**                1:07cv26

**MEMORANDUM OPINION AND ORDER**

Pursuant to Fed. R. Civ. P. 58, the Court directs the Clerk of Court to enter a separate judgment order and to transmit copies of this Order to counsel of record.

DATE: January 28, 2010

> /s/ Irene M. Keeley
> IRENE M. KEELEY
> UNITED STATES DISTRICT JUDGE